IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DWAN CHAVEZ,
On behalf of S.A.B., a minor,

      Plaintiff,

v.                                                                                Civ. No. 15-589 GBW

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Plaintiff's Motion and Memorandum to Reverse and Remand the Social Security Agency (SSA) decision to deny Plaintiff Supplemental Security Income (SSI) benefits. *Doc. 19*. For the reasons discussed below, Plaintiff's motion is DENIED, and this action is DISMISSED with prejudice.

    **I.**      **PROCEDURAL HISTORY**

Plaintiff filed an initial application for child's SSI benefits on behalf of S.A.B. on May 9, 2012, when S.A.B. was ten years old. Administrative Record (AR) at 117-25, 187. Plaintiff alleged that S.A.B. was disabled beginning October 31, 2011 as a result of a learning disability. AR at 187, 190. An Administrative Law Judge (ALJ) held a hearing on September 4, 2013. AR at 32. On November 26, 2013, the ALJ issued an unfavorable written decision finding that S.A.B. was not disabled. AR at 9-26. Plaintiff appealed to

the Social Security Administration's Appeals Council on January 21, 2014. AR at 6-8. The SSA Appeals Council declined review on May 19, 2015. AR at 1-5. Plaintiff filed in this Court on July 8, 2015, seeking review of the ALJ's decision. *Doc. 1*.

## II. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence" and (2) is grounded in an evaluation of the evidence that comports with the proper legal standards. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800-01 (10th Cir. 1991). "In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (citation and internal quotations omitted). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Casias*, 933 F.3d at 800. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id*. at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from

being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted).

### III.   PARTIES' POSITIONS

Plaintiff claims that the final administrative decision denying child's SSI benefits for her minor daughter S.A.B. is not supported by substantial evidence. Specifically, Plaintiff asserts that the ALJ erred by (1) making a conclusory and legally insufficient determination of Plaintiff's credibility and (2) failing to fully evaluate and discuss the substantial evidence indicating that S.A.B. possessed a marked limitation in the domain of "attending and completing tasks." The Commissioner argues that (1) the ALJ properly found that substantial evidence supported the conclusion that Plaintiff did not possess a marked limitation in the area of "attending and completing tasks" and (2) the ALJ's credibility finding was well-founded and sufficiently articulated. Ultimately, the Court concludes that the ALJ did not err and therefore the opinion should not be disturbed.

### IV.   ALJ EVALUATION

#### A. Legal Standard

A child is disabled if the child "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c (a)(3)(C)(i). Social

Security Administration regulations provide for a three-step process to determine disability: (1) whether the child is currently engaged in substantial gainful activity; (2) whether the child has a medically determinable impairment or combination of impairments that is severe; and (3) whether the impairment meets, medically equals, or functionally equals a listed impairment found in Appendix 1, Subpart P, of 20 C.F.R. Pt. 404. *See* 20 C.F.R. § 416.924(a). If the child is either engaged in substantial gainful activity or does not have an impairment or combination of impairments that is severe, the process does not reach the third step. The child is considered disabled in any case where the third step is reached and met.

If a child's impairment does not match a specifically enumerated impairment found in the Appendix 1 listing, the ALJ conducts a "functional equivalence" analysis by considering six domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for self; and (6) health and physical well-being. 20 C.F.R. § 416.926a (b)(1). Under this analysis, the impairments found to afflict the child are considered functionally equivalent to a listed impairment for purposes of a disability finding at the third step if the child has either a "marked" limitation in any two of the domains, or an "extreme" limitation in any one domain. 20 C.F.R. § 416.926a(d).

### B. The ALJ's Decision

On November 26, 2013, the ALJ issued a decision denying S.A.B.'s application for SSI benefits. AR at 26. In denying S.A.B.'s claim, the ALJ applied the required three-step sequential analysis to determine if a child has a disability. AR at 15-25. At step one, the ALJ found that Plaintiff was an adolescent on the date the application was filed and that she had not engaged in substantial gainful activity at any time relevant to this decision. AR at 15. At step two, the ALJ found the severe impairments of attention deficit hyperactivity disorder (ADHD) and a learning disorder. *Id.* At step three, the ALJ found that S.A.B. does not have an impairment or combination of impairments that meets or medically equals a listed impairment. Accordingly, the ALJ proceeded to evaluate S.A.B.'s claim using the functional equivalence analysis. *Id.* In so doing, the ALJ found that S.A.B. has "a marked limitation" in the domain of "acquiring and using information" and "less than marked limitation" in the domain of "attending and completing tasks." AR at 20-22. The ALJ further found that S.A.B. had no limitations as to any of the remaining domains. AR at 22-25. Thus, the ALJ concluded that Plaintiff was not disabled under Section 1614(a)(3)(C) of the Social Security Act. AR at 26.

### V. ANALYSIS

#### A. Credibility

Plaintiff first alleges that the ALJ failed to make a specific credibility finding of Plaintiff's testimony, instead relying on "boilerplate" language to improperly conclude

5

that her testimony did not establish a disability. *Doc. 19* at 8. "In determining whether a child is disabled, the agency will accept a parent's statement of a child's symptoms if the child is unable to adequately describe them." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1176 (10th Cir. 2014) (citing 20 C.F.R. § 416.928(a)). "In such a case, the ALJ must make specific findings concerning the credibility of the parent's testimony, just as he would if the child were testifying." *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001). In making such findings, "[i]t is not sufficient for [the] adjudicator[] to make a single, conclusory statement that . . . the statements about the individual's symptoms are (or are not) supported or consistent . . . [or] for [the] adjudicator[] simply to recite the factors described in the regulations for evaluating symptoms." SSR 16–3p, 2016 WL 1119029, at *9 (March 16, 2016). Rather, the ALJ's determination "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*

The ALJ's decision indicates that he considered Plaintiff's testimony regarding S.A.B.'s abilities, limitations, and activities in great detail. *See* AR at 16-17. Further, reliance on elements of this specific testimony in the ALJ's determination that S.A.B. had marked limitations in the domain of "acquiring and using information" and less than marked limitations in the area of "attending and completing tasks" indicates that

he found Plaintiff's testimony to be partially credible. *See* AR at 21, 22. However, while acknowledging that Plaintiff's statements demonstrate certain limitations in S.A.B.'s abilities, the ALJ found that "the statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with finding that the claimant does not have an impairment or combination of impairments that functionally equals the listings for the reasons explained below." AR at 20. While such general language may not alone suffice to support the ALJ's credibility finding, the ALJ further discussed contradictory evidence in detail which provided the necessary support for his credibility finding.

For instance, in discussing evidence that contradicts Plaintiff's testimony, the ALJ highlighted the opinions of the reviewing state agency experts and several teacher questionnaires from educators who had worked with S.A.B., which indicated that S.A.B. did not have a marked limitation in "attending and completing tasks." *See* AR at 19-20, 22. The ALJ further highlighted portions of Plaintiff's own statement which were inconsistent with her testimony regarding S.A.B.'s functional deficiencies, including testimony that S.A.B. possessed the abilities to complete household chores with reminders, make videos, read schoolbooks and magazines, conduct research on the Internet, care for the family dogs, and keep her homework organized. *See* AR at 16-17, 23; *see also* AR at 45-50. All of this evidence was legitimately considered by the ALJ in evaluating Plaintiff's statements about the claimant's symptoms. *See* 16–3p, 2016 WL

7

1119029, at *8 (determination of individual's symptoms and related limitations may be based on consistency of reported symptoms and limitations with other evidence in the record); *Nelson v. Comm'r of Soc. Sec. Admin.*, 252 F. Supp. 2d 1148, 1157 (D. Kan. 2003) (affirming ALJ's finding that Plaintiff's testimony was not credible where ALJ pointed to inconsistencies between the testimony and other evidence in the record).  Because the ALJ's decision ultimately sets forth the specific evidence relied upon in evaluating the credibility of Plaintiff's statements, the proper legal requirements have been satisfied and the credibility determination is without error.  *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000); *see also Qualls v. Astrue*, 428 F. App'x 841, 845-48 (10th Cir. 2011) (the ALJ properly determined that statements by claimant concerning intensity, persistence, and limiting effects of her symptoms were not credible where the ALJ's ultimate credibility determination had been grounded in analysis that was closely linked to substantial record evidence).

### B.  Functional Equivalency Analysis: Attending and Completing Tasks

It is undisputed that the impairments attributed to S.A.B. by the ALJ do not expressly match those listed in Appendix 1, Subpart P, of 20 C.F.R. Pt. 404.  Accordingly, determination of whether S.A.B. is disabled based on the functional equivalency of her impairments turns on whether she has either (1) a "marked" limitation in any two of the six enumerated domains or (2) an "extreme" limitation in any one domain.  20 C.F.R. § 416.926a(d).  Neither party has contested the ALJ's finding

that S.A.B. suffers a marked limitation in the area of "acquiring and using information." Further, Plaintiff has not challenged the ALJ's conclusion that S.A.B. possesses no limitation in the areas of: interacting and relating with others; moving about and manipulating objects; caring for herself; and health and physical well-being. *See generally doc. 19*. Accordingly, the only remaining inquiry pertinent to the determination of disability is whether the ALJ erred in failing to conclude that S.A.B. possessed a "marked" limitation in the domain of "attending and completing tasks." *See doc. 19* at 9-11; *see also* 20 C.F.R. §§ 416.926a(b)(1); 416.926a(d).

> Social Security Rule 09-4p states:
>
> In the domain of "Attending and completing tasks," we consider a child's ability to focus and maintain attention, and to begin, carry through, and finish activities or tasks. We consider the child's ability to initiate and maintain attention, including the child's alertness and ability to focus on an activity or task despite distractions, and to perform tasks at an appropriate pace. We also consider the child's ability to change focus after completing a task and to avoid impulsive thinking and acting. Finally, we evaluate a child's ability to organize, plan ahead, prioritize competing tasks, and manage time.

SSR 09-4p, 2009 WL 396033, at *2. In determining that S.A.B. possessed a less than marked limitation in this domain, the ALJ relied on several supporting sources of evidence in the administrative record. The ALJ evaluated Plaintiff's testimony that S.A.B. makes videos, reads magazines, researches on the internet, feeds and bathes the family dogs, and cleans. AR at 22; *see also* AR at 45-48, 50. The ALJ also referenced Juliana Hagel's October 2012 teacher questionnaire, in which Ms. Hagel reported S.A.B.

to have no problems in attending and completing tasks and indicated that S.A.B. was able to complete her classwork and homework assignments. AR at 19, 22; *see also* AR at 216. Further, the ALJ attributed great weight to the conclusions of the state agency psychological consultants, who opined that S.A.B. was "alert and oriented," exhibited "normal concentration and attention," and had a less than marked limitation in attending and completing tasks. AR at 20, 22; *see also* AR at 63-64, 72-73. Finally, the ALJ also afforded great weight to the teacher questionnaire of Ms. Alicia Hayes, in which she concluded that S.A.B. was "very motivated and mostly on task" and reported either "No Problem" or only "A slight problem" compared to other children without impairments in each of the thirteen enumerated activities related to S.A.B.'s abilities in attending and completing tasks. AR at 22; *see also* AR at 226.

In challenging the ALJ's findings as to this domain, Plaintiff alleges that the ALJ did not conduct the proper analysis of the teachers' opinions, instead picking and choosing only those portions which supported the denial of benefits. *See doc. 19* at 9-10 (citing AR at 19-20). Plaintiff asserts several errors regarding consideration of these evaluations, including: (1) the ALJ's failure to discuss the opinions of Debbie Martinez or Alicia Ortiz y Martinez, S.A.B.'s second and third grade teachers, respectively; (2) the ALJ's failure to adequately consider the testimony of S.A.B.'s Special Education teacher Nicole Lawrence and other evidence in the record supporting finding a marked limitation in attending and completing tasks; (3) the ALJ's failure to adjust the weight

10

given to Ms. Hagel's October 2012 evaluation in light of her subsequent August 2013 evaluation; and (4) the ALJ's failure to discuss the accommodations needed by S.A.B., which indicate the extent of her limitations in maintaining attention despite distractions and performing at an appropriate pace. *See doc. 19* at 9-11. The Court addresses each of these arguments in turn.

As noted above, while the ALJ is not required to discuss every piece of evidence, he must discuss significantly probative evidence he rejects in addition to the evidence supporting his decision. *Clifton*, 79 F.3d at 1009-10. As the record indicates and the SSA concedes, the ALJ indeed omitted any mention of the teacher questionnaires submitted by Ms. Martinez and Ms. Ortiz y Martinez. *See doc. 23* at 11; AR at 12-26. However, such an error is harmless unless the opinion that the ALJ failed to analyze contradicts the decision reached by the ALJ. *See, e.g., Mays v. Colvin*, 739 F.3d 569, 578-79 (10th Cir. 2014); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162-63 (10th Cir. 2012) (failure to weigh a medical opinion that is not inconsistent with ALJ's finding harmless error "because giving greater weight to [the] opinion would not have helped her."). Here, the evaluations of both Ms. Martinez and Ms. Ortiz y Martinez, viewed in their entirety, support the conclusion reached by the ALJ.

In her evaluation, Ms. Ortiz y Martinez did indicate that S.A.B. had an obvious problem in following multi-step instructions and a slight problem in working at a reasonable pace. AR at 158. However, her questionnaire also clearly stated that S.A.B.

11

possessed "No Problem" in the eleven other relevant skills, including, among other things: paying attention when spoken to, sustaining attention during play, focusing long enough to finish assigned tasks, organizing her own materials, completing class and homework assignments without distracting herself or others, and completing work accurately without careless mistakes. *Id*. Similarly, Ms. Martinez found no obvious problems as to any of the relevant activities regarding the limitation of attending and completing tasks. *See* AR at 170. She indicated that S.A.B. possessed only slight limitations in carrying out multi-step instructions, completing work accurately, and working at a reasonable pace. *Id*. She found that S.A.B. demonstrated "No Problem" with the remaining ten skills. *Id*. As these questionnaires clearly do not support a finding of marked limitation in the domain of attending and completing tasks, the ALJ did not commit reversible error in failing to expressly evaluate the opinions of Ms. Martinez and Ms. Ortiz y Martinez. *See Clifton*, 79 F.3d at 1009-10; *Mays*, 739 F.3d at 578-79.

Plaintiff next alleges that the ALJ's consideration of Ms. Lawrence's testimony was inadequate. *Doc. 19* at 9-10. In determining that S.A.B. had a marked limitation in acquiring and using information but a less than marked limitation in the domain of attending and completing tasks, the ALJ afforded "some weight" to Ms. Lawrence's opinion. AR at 19. In forming this decision, the ALJ considered Ms. Lawrence's interactions with S.A.B. in a classroom setting along with the inconsistency of Ms.

Lawrence's opinion with other evidence in the record. *Id*. In the portions of her teacher questionnaire relevant to the domain of attending and completing tasks, Ms. Lawrence opined that S.A.B. demonstrated a very serious problem in carrying out multi-step instructions as well as obvious problems in carrying out single-step instructions and paying attention when spoken to directly. AR at 237. On the remaining relevant factors, Ms. Lawrence found either no problems or only slight problems. *Id*.

As an initial matter, even accepting them in full, Ms. Lawrence's conclusions do not dictate a finding of marked limitation. *See, e.g., Adams v. Barnhart*, No. 06-1044-MLB, 2006 WL 4045933, at *3 (D. Kan. Dec. 1, 2006) (finding a less than marked limitation in the domain of attending and completing tasks where each teacher questionnaire identified a serious or very serious problem in 2-4 out of the 13 relevant activity categories); *Chapman v. Astrue*, No. CIV.A. 08-CV-01580-PAB, 2009 WL 2399931, at *8 (D. Colo. July 31, 2009) (finding a less than marked limitation where a teacher questionnaire concluded that claimant "had 'obvious' problems in a number of activities, but found 'serious' problems in only a handful of [] activities."). Moreover, even assuming that Ms. Lawrence's opinion was adverse to the ALJ's determination, the ALJ did not err in the weight apportioned to her questionnaire. Plaintiff asserts that the ALJ acted improperly in partially rejecting Ms. Lawrence's opinion by failing to discuss the evidence in the record consistent with her opinion. *See doc. 19* at 9-10. However, Plaintiff is unable to point to any such evidence. *See generally doc. 19*. None of the other

13

questionnaires submitted by S.A.B.'s teachers concludes that she possessed a "very serious problem" in carrying out multi-step instructions or in any other relevant skills. *See* AR at 158 (Ms. Ortiz Y Martinez questionnaire), 170 (Ms. Martinez questionnaire), 217 (Ms. Hagel 10/12 questionnaire), 226 (Ms. Haynes questionnaire), 293 (Ms. Hagel 8/13 questionnaire). In addition, none of these evaluations corroborated Ms. Lawrence's conclusion that S.A.B. possessed even obvious problems in carrying out single-step instructions or paying attention when spoken to, with each evaluation finding either "No Problem" or only slight problems in these two areas. AR at 158, 170, 217, 226, 293. Finally, Ms. Lawrence's findings as to the extent of S.A.B.'s limitation were contradicted by state agency doctor Elizabeth Chiang and reviewing state agency psychologist Renate Wewerka, who both concluded that S.A.B. was "alert and oriented" and exhibited "normal concentration and attention." AR at 63-64, 73. Thus, to the limited extent that Ms. Lawrence's questionnaire contains assertions actually supporting the finding of a marked limitation in attending and completing tasks, the ALJ did not err in concluding that her opinion was inconsistent with other evidence in the record.

Plaintiff's third contention of error in the ALJ's decision stems from an alleged failure to accord appropriate weight to Ms. Hagel's second teacher questionnaire. Plaintiff asserts that this second questionnaire shows that, once Ms. Hagel knew S.A.B. better, she saw more significant problems in the domain of attending and completing tasks. *See doc. 19* at 10-11. SSA Regulations instruct that, when assigning weight to the

14

opinions of non-medical professionals such as teachers, an ALJ should consider how long and how frequently the opinion source has known and interacted with the claimant.  *See* SSR 06-03P (S.S.A. Aug. 9, 2006).  This guidance supports the conclusion that Ms. Hagel's initial questionnaire, in which she reported that S.A.B. exhibited no problems in any of the activities relevant to the domain of attending and completing tasks, should be afforded less weight than her second questionnaire from ten months later, which concluded that S.A.B. has obvious problems in carrying out multi-step instructions and completing work accurately without careless mistakes.  *Compare* AR at 217 (Hagel 10/12 questionnaire) *with* AR at 293 (Hagel 8/13 questionnaire).

However, the Court need not resolve the comparative weight of the two evaluations in order to affirm the ALJ's treatment of Ms. Hagel's opinion.  Regardless of whether the ALJ erred in the weight he apportioned to Ms. Hagel's second questionnaire, a departure from the guidelines regarding evaluation of opinion evidence will warrant remand only if the opinion was inconsistent with the ALJ's findings or undermined the substantial evidence supporting the ALJ's disability determination.  *See Keyes-Zachary*, 695 F.3d at 1165 (finding harmless error where an opinion's finding regarding claimant's limitations was not inconsistent with the ALJ's determination).  In this case, Ms. Hagel's updated teacher questionnaire, viewed in its entirety, does not support a finding that S.A.B.'s limitation in the domain of attending and completing tasks was marked.  Ms. Hagel concluded that S.A.B. possessed either

15

"No Problem" or only slight problems in eleven of the thirteen relevant activities, including: paying attention when spoken to directly, organizing her own materials, completing homework and class assignments, and working without distracting herself or others. AR at 293. As noted, a teacher questionnaire does not generally support a finding of marked limitation absent several serious or very serious problems within the relevant activities. *See Adams*, 2006 WL 4045933, at *3; *Chapman*, 2009 WL 2399931, at *8. Accordingly, Ms. Hagel's opinion is not inconsistent with other evidence in the record or the ALJ's ultimate determination that S.A.B.'s limitation in this domain is less than marked.

Further, even assuming *arguendo* that Ms. Hagel's second evaluation could be considered adverse to the determination that S.A.B. was not disabled, remand would not be warranted. Given that the ALJ has articulated substantial evidence which is largely consistent throughout the record to support his determination, Plaintiff's mere identification of certain portions of the teacher questionnaires which could potentially support a marked limitation does not allow this Court to reweigh such evidence or substitute its judgment for that of the SSA. *See Lax*, 489 F.3d at 1084; *see also Hilson v. Barnhart*, 64 F. App'x 134, 136 (10th Cir. 2003) (refusing to "reweigh the evidence" in holding that the ALJ's determination that child claimant's limitation in concentration, persistence, and pace was only moderate, not marked, was supported by substantial evidence, despite contention that ALJ selectively evaluated evidence where the record

16

contained contradicting opinions about claimant's concentration problems).  Without engaging in such reweighing, this Court cannot find that the ALJ committed an error on this basis.

Plaintiff's final argument against the ALJ's determination that S.A.B. has a less than marked limitation in the domain of attending and completing tasks is that the ALJ failed to discuss S.A.B.'s required accommodations.  Plaintiff argues that these accommodations are evidence that S.A.B. has a marked limitation in her abilities to maintain attention, focus despite distractions, and perform at an appropriate pace.  *Doc. 19* at 11.  It is undisputed that S.A.B. has multiple accommodations provided by her school in the special education setting, including: preferential seating, adult assistance, frequent feedback, checking for understanding, immediate feedback, short instructions of no more than 1-2 steps, repeated instructions, visual aids, multimodal/multi-sensory presentations, extended time for exams, opportunity for dictation, extra time for written response, and opportunity to read material silently.  *See* AR at 375, 397.  SSA regulations have established that "good performance in a special education setting does not mean that you are functioning at the same level as other children your age who do not have impairments."  20 C.F.R. § 416.924a (b)(7)(iv).  However, these regulations also clearly state that the fact that a child has received an accommodation or placement into a special education program is not itself determinative of whether the child has a marked limitation.  *Id.* ("The fact that you do or do not receive special education services does

17

not, in itself, establish your actual limitations or abilities"); *see also Briggs*, 248 F.3d at 1239 n. 5 (placement in special education program relevant but not conclusive in disability determination); *Drake v. Barnhart*, No. CIV.A. 04-6084, 2005 WL 3078195, at *4 (E.D. Pa. Nov. 15, 2005) ("The fact that a child requires accommodations at school does not mean he or she has 'marked' limitations under the Social Security Act.").

Contrary to Plaintiff's assertion, the record indicates that the ALJ considered the special education and accommodations received by S.A.B. in determining her limitations. Specifically, the ALJ noted that S.A.B.'s individual education plan provided an array of special services after testing revealed specific learning disabilities in reading, math, and written language classes. *See* AR at 17. Given the discrepancy between S.A.B.'s limitations with regard to the first and second domains, the ALJ concluded that the accommodations provided by her school were indicative of S.A.B.'s undisputedly marked limitations in the area of acquiring and using information. *See* AR at 21. The ALJ also relied on evidence in the record to determine that S.A.B.'s preferential seating was not a result of her learning disabilities or ADHD, but rather was meant to accommodate the loss of her glasses while she waited to become eligible for a new pair from Medicaid. *See* AR at 16-17; AR at 51-52.

In response, Plaintiff generally asserts that the ALJ did not consider that these accommodations suggest a marked limitation in S.A.B.'s abilities to maintain focus and an appropriate pace on her assignments. *Doc. 19* at 11. However, Plaintiff has failed to

18

point to any evidence in the record which shows that the assistance provided by the school was intended to address marked problems in the domain of attending and completing tasks, as opposed to those in the domain of acquiring and using information. Indeed, the accommodations provided by the school appear to be tailored to address S.A.B.'s shortcomings in activities relevant to the latter domain, as she exhibited serious or very serious problems in: understanding vocabulary, reading and comprehending written materials, expressing herself orally or in writing, learning new material, and applying previously learned material. *See* AR at 157, 236, 292. Accordingly, the ALJ did not err in considering these accommodations in his analysis of the domain of acquiring and using information while not according them the same weight in his analysis of the domain of attending and completing tasks.

Finally, even assuming that the lack of marked limitation in S.A.B.'s abilities in the domain of attending and completing tasks is primarily attributable to the supportive setting of the school's accommodations, an ALJ's decision will not be remanded on such basis so long as he considers the child's functionality outside the structured school setting. 20 C.F.R. § 416.924a (b)(5)(iv)(C); s*ee also Santiago ex rel. V.S. v. Astrue*, No. CIV.A. 08-40248-FDS, 2010 WL 1379836, at *11 (D. Mass. Mar. 31, 2010); *Watson ex rel. K.L.W. v. Astrue*, No. 07-CV-6417T, 2008 WL 3200240, at *4-5 (W.D.N.Y. Aug. 5, 2008). As noted above, the ALJ analyzed S.A.B.'s out-of-school abilities in the domain of attending and completing tasks in great detail, emphasizing her ability to

make videos, read schoolbooks and magazines, conduct research on the internet, care for the family dogs, keep her homework organized, and assist with household chores when given reminders. *See* AR at 16-17, 23; *see also* AR at 45-50. Accordingly, the ALJ properly evaluated S.A.B's accommodations and considered her limitations in the relevant domain outside the context of the structured educational setting.

### C. CONCLUSION

Plaintiff has failed to establish that the ALJ committed reversible error. Accordingly, Plaintiff's Motion to Remand to Agency for Rehearing (*doc. 19*) is DENIED, and this action is DISMISSED with prejudice.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**